

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 JUN 19  PM 3: 24

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COLONY INSURANCE COMPANY | CIVIL ACTION 09-3962 |
| VERSUS | |
| CHARLES RELAN D/B/A BIMBO'S BEST PRODUCE, CHARLES RELAN, individually, and BIMBO'S BEST PRODUCE, INC. | JUDGE SECT. R MAG. 1<br><br>MAGISTRATE JUDGE |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Complaint of Colony Insurance Company ("Colony") for Declaratory Relief against Charles Relan d/b/a Bimbo's Best Produce, Charles Relan, individually, and Bimbo's Best Produce, Inc. (collectively "the defendants") respectfully alleges and avers upon information and belief as follows:

### PRELIMINARY STATEMENT

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case or controversy between Colony and the defendants regarding the parties' respective rights and obligations under the three Commercial Farm and Ranch Liability policies issued to Charles Relan d/b/a Bimbo's Best Produce by Colony.

Fee $350
Process ___
X  Dktd ___
___ CtRmDep ___
___ Doc. No. ___

1

NO.99942518.1

2. Colony issued the following policies (collectively referred to as the "Policies") to Charles Relan d/b/a Bimbo's Best Produce for the respective periods:

(1) Policy No. FO 3394702 (December 6, 2005-2006);

(2) Policy No. FO 3515582 (December 6, 2006-2007); and

(3) Policy No. FO 3657085 (December 6, 2007-2008).

3. The Polices provide Commercial Farm and Ranch liability insurance subject to certain terms, conditions, limitations and exclusions.

4. Demand upon Colony for a defense against the action entitled *Israel Antonio-Morales v. Bimbo's Best Produce, Inc., et al*, Case No. 08-cv-5105 (hereinafter "the underlying *Antonio-Morales* action") pending in this court was made by one or more of the following persons or entities, Charles Relan d/b/a Bimbo's Best Produce, Charles Relan, individually, and/or Bimbo's Best Produce, Inc.

5. Colony has agreed to defend Charles Relan d/b/a Bimbo's Best Produce under a reservation of rights in the underlying *Antonio-Morales* action, but seeks a judgment declaring that it has no duty to defend or to indemnify Charles Relan, individually, Charles Relan d/b/a Bimbo's Best Produce or Bimbo's Best Produce, Inc., or to pay any proceeds under the Policies, for the claims asserted against them.

## PARTIES

6. At all pertinent times, Colony was, and still is, a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in Richmond, Virginia.

NO.99942518.1

7. At all pertinent times, Charles Relan d/b/a Bimbo's Best Produce was, and still is, an individual, and/or sole proprietorship, with its principal place of business in the City of Amite, Parish of Tangipahoa, State of Louisiana.

8. At all pertinent times, Charles Relan was, and still is, an individual residing in the City of Amite, Parish of Tangipahoa, State of Louisiana.

9. Bimbo's Best Produce, Inc. was a corporation that was formed under the laws of Florida and registered with Louisiana's Secretary of State as a foreign corporation under the laws of Louisiana. On information and belief, the State of Louisiana revoked the foreign corporate status of Bimbo's Best Produce, Inc. on December 19, 2006.

## JURISDICTION

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## VENUE

11. Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391 because Charles Relan resides in the City of Amite, Parish of Tangipahoa, State of Louisiana, which is within this judicial district.

12. Venue is also proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391 because Charles Relan d/b/a Bimbo's Best Produce was, and still is, an individual, and/or sole proprietorship, with its principal place of business in the City of Amite, Parish of Tangipahoa, State of Louisiana, which is within this judicial district.

3

13. Venue is also proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred within this judicial district. The City of Amite, Parish of Tangipahoa, State of Louisiana, which is within this judicial district, is the place where Colony's policy was issued to Relan and claims of the underlying *Antonio-Morales* action took place.

## ALLEGATIONS OF THE UNDERLYING *ANTONIO-MORALES* ACTION

14. A number of Mexican citizens were brought to the United States as H-2A guest workers ("Plaintiffs") sued Charles Relan, individually, Charles Relan d/b/a Bimbo's Best Produce, and Bimbo's Best Produce, Inc., in the United States District Court for the Eastern District of Louisiana in the underlying *Antonio-Morales* action.[1]

15. It is alleged that the defendants owned strawberry fields in Amite, Louisiana.[2]

16. Plaintiffs allege that the defendants "subjected the guest workers to a scheme of psychological coercion, threats of serious harm, and threatened abuse of the legal process to maintain control over them and force them to continue laboring in [the defendants'] strawberry fields."[3]

17. Plaintiffs allege that they feared for their physical safety because Charles Relan allegedly berated and insulted them, fired his gun over their heads at times, shot and killed a dog near the fields to intimidate them and physically assaulted and/or battered at least one worker by shoving him.[4]

---

[1] A true and correct copy of the Complaint and Amended Complaint in the underlying *Antonio-Morales* action is attached hereto as Exhibit "1."
[2] *See*, Exhibit 1 at paragraph 1.
[3] *See*, Exhibit 1 at paragraph 2.
[4] *See*, Exhibit 1 at paragraph 3.

4

NO.99942518.1

18.     The shoving incident allegedly caused the Plaintiffs to feel even more fearful and to believe that Relan was "capable of and willing to inflict harm on them."[5]

19.     Plaintiffs assert causes of action for: (1) violating trafficking laws under the federal Trafficking Victims Protection Act, ("TVPA"); (2) forced labor under the TVPA; (3) failure to pay minimum wage under the First Labor Standards Act ("FLSA"); (4) breach of the guest workers' H-2A employment contracts; and (5) battery.[6]

20.     Plaintiffs claim that the defendants violated 18 U.S.C. § 1590, which prohibits the "recruiting, harboring, transporting," by any means, for "slavery, involuntary servitude, debt bondage or forced labor."[7]

21.     Plaintiffs claim that the defendants violated 18 U.S.C. §1590 and §1592 by transporting the Plaintiffs from Mexico to Louisiana and then confiscating their passports and H-2A visas.[8]

22.     It is also alleged that the defendants violated this statute by threatening Plaintiffs with unlawful arrest, eviction, and deportation. Plaintiffs seek compensatory and punitive damages.[9]

23.     Plaintiffs claim that the defendants "knowingly attempted to and did obtain the labor and services of Plaintiffs" in violation of 18 U.S.C. § 1589(2) "using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce

---

[5] See, Exhibit 1 at paragraph 28.
[6] See generally, Exhibit 1.
[7] See, Exhibit 1 at paragraph 70.
[8] See, Exhibit 1 at paragraph 72.
[9] See, Exhibit 1 at paragraphs 42 and 74.

5

Plaintiffs to believe that they would suffer serious harm if they were to leave the employ" of the defendants.[10]

24. 18 U.S.C. § 1589 prohibits anyone from obtaining labor or services of a person by: (1) threats of serious harm or physical restraint; (2) means intending the person to believe they would be harmed if they did not do the work; or (3) means of abuse or threatened abuse. Plaintiffs seek compensatory and punitive damages for the alleged violation(s).[11]

25. It is also alleged that upon the Plaintiffs' arrival in 2007, the defendants confiscated the plaintiffs' passports and H-2A visas and threatened them with unlawful arrest, eviction, and deportation. Plaintiffs allegedly had no choice but to continue working at the defendants' farm "even though they wanted to escape." Although the conditions of employment were purportedly "intolerable and unlawful," Plaintiffs apparently feared leaving the farm without their passports and visas.[12]

26. Plaintiffs allege that they reasonably feared that, without their passports and visas, they could be arrested and detained by immigration or other law enforcement authorities. It is further alleged that on several occasions between September 2007 and February 2008, some workers requested that the defendants return their passports and immigration documents but that the defendants refused to do so until they completed their work in the 2007-2008 season.[13]

---

[10] See, Exhibit 1 at paragraphs 75 and 77.
[11] Id.
[12] See, Exhibit 1 at paragraphs 42, 47 and 79.
[13] See, Exhibit 1 at paragraphs 48 and 49.

27. Plaintiffs also allege that defendant's paid less than the federally required minimum wage and failed to maintain employment records. Plaintiffs seek recovery of their lost wages, liquidated damages and attorneys' fees for these claims.[14]

28. It is alleged that, "[a]t all times relevant to this action, the H-2A Plaintiffs were employed by Relan within the meaning of 29 U.S.C. § 203(g)," and, thus, each plaintiff was the defendants' "employee" within the meaning of 29 U.S.C. § 203(e).[15]

29. Plaintiffs allege that defendant's failed to provide the statutorily minimum work conditions and protections to comply with the H2-A worker program, failed to pay the appropriate amount and did not reimburse the plaintiffs' travel costs. Plaintiffs seek monetary damages for these claims.[16]

30. Plaintiffs claim that, in 2006, 2007 and 2008, the defendant's "intentionally applied pesticides" on the strawberry fields in the direct vicinity of the plaintiffs as they worked. The spray and vapors from these pesticides came into contact with the [H-2A] plaintiffs' skin and mouths causing "physical discomfort" and allegedly "constituted a harmful and offensive contact to Plaintiffs." Plaintiffs seek damages for their claimed injury, including for mental distress.[17]

31. Plaintiffs seek recovery of, among other things, compensatory damages, liquidated damages, attorneys' fees and punitive damages.[18]

---

[14] See, Exhibit 1 at paragraphs 37, 83, 85 and 86.
[15] See, Exhibit 1 at paragraphs 55-57.
[16] See, Exhibit 1 at paragraph 83.
[17] See, Exhibit 1 at paragraphs 34, 35, 88 and 89.
[18] See, Exhibit 1 at Prayer for Relief.

7

## THE COLONY POLICIES

32.  The named insured under the Policies is Charles Relan d/b/a Bimbo's Best Produce.

33.  The Policy defines the term "insured" to mean the named insured, and if an individual, the term "insured" also means his or her relatives; and "any other person under the age of 21 who is in the care of any person specified above." The term "Insured" also means any of Relan's "employees (other than executive officers), but only for acts that: (1) cause 'bodily injury' or 'personal injury' to someone other than you or a co-employee; and (2) are within the scope of the employee's employment by [Relan]."

34.  All of the Policies contain Coverage H - Bodily Injury and Property damage Liability coverage, which states that Colony "will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury'[19] or 'property damage'[20] to which this insurance applies."

35.  The Policies apply to "'bodily injury' and 'property damage' only if the 'bodily injury' or 'property damage' is caused by an 'occurrence'[21]; and the 'bodily injury' or 'property damage' occurs during the policy period." Colony "will have the right and duty to defend any 'suit' seeking those damages. However, [Colony] will have no duty to defend any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

---

[19]   "Bodily Injury" means bodily injury, sickness or disease sustained by a person, and includes death resulting from any of these at any time.
[20]   "Property Damage" means "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."
[21]   "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

8

[Colony] may at [its] discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

36. The amount that Colony will pay for damages is limited as described in Section II – Limits of Insurance; and Colony's "right and duty to defend end when [it has] used up the applicable Limit of Insurance in the payment of judgments or settlements ...."

37. The Policies also state that Colony "will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'personal injury'[22] or 'advertising injury' to which this insurance applies." The Policies further state that "[t]his insurance applies to 'personal injury' only if caused by an offense: (1) committed during the policy period; and (2) [a]rising out of personal activities or out of operations incidental to 'farming' ...."

38. The Polices are subject to an Expected or Intended Injury Exclusion, which bars coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.' This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

39. The Policies are also subject to an Employers' Liability exclusion, which bars coverage for "Bodily injury" sustained by:

   a. Any employee (other than a "residence employee")[23] as a result of his or her employment by the "insured";

   b. Any "residence employee", unless the employee makes a written claim or brings "suit" no later than 36 months after the end of the policy period; or

---

[22] "Personal injury" means "injury, other than 'bodily injury', arising out of one or more of the following offenses: (1) False arrest, detention or imprisonment; (2) Malicious prosecution; or (3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor."

[23] "Residence Employee" means an "insured's" employee who performs duties in connection with the maintenance or use of the "residence premises," including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the "business" or any "insured".

9

      c.      The spouse, child, parent, brother or sister of any employee as a consequence of "bodily injury" to that employee.

This exclusion applies whether the defendant's may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury. The only exceptions to this exclusion are in "occurrences" of "bodily injury" for which the "insured" has assumed liability under an "insured contract."

    40.    The Policies are subject to a Sexual Molestation, Corporal Punishment or Physical or Mental Abuse exclusion that bars coverage for, among other things, "'bodily injury' or 'property damage' arising out of sexual molestation, corporal punishment or physical or mental abuse ...."

    41.    The Policies are subject to an exclusion that bars coverage for "personal injury" or "advertising injury" arising out of, among other things, "the willful violation of a penal statute or ordinance committed by, or with the consent of, the 'insured' ...."

    42.    The Policies are subject to an Employment Related Practices Exclusion that bars coverage for "'bodily injury,' 'property damage' or 'personal injury' arising out of any: (A) Refusal to employ; (B) Termination of employment; (C) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment (includes sexual harassment), humiliation, discrimination or other employment related practices, policies, acts or omissions; or (D) Consequential 'bodily injury' or 'property damage' as a result of A., B., or C. above."

This exclusion applies whether the "insured" may be held liable as an employer or in any other capacity or to any obligation to share damages with or indemnify or reimburse another that must pay damages because of the injury.

10

43. The Polices are subject to an Assault and Battery Exclusion that bars coverage for "'bodily injury,' 'personal injury' or 'property damage' arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person."

44. This Policies are subject to a Punitive or Exemplary Damages exclusion, which bars coverage for any "claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. [Colony] shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages."

## COUNT I – DECLARATORY RELIEF

45. An actual, present and existing controversy has arisen between Colony and the defendants with respect to the existence and scope of Colony's indemnity and defense obligations, if any, in connection with the underlying *Antonio-Morales* action.

46. Pursuant to the Declaratory Judgment Act, Colony seeks a judicial declaration of its rights and duties as to Relan in respect of the underlying *Antonio-Morales* lawsuit. The Court's making such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policies. Colony specifically seeks a judgment declaring that there is no coverage with respect to whether there is coverage in connection with the underlying *Antonio-Morales* action under the Commercial Farm and Ranch Liability coverage part. A declaration in this respect would serve the interests of justice.

47. In addition to the foregoing provisions, Colony pleads all other conditions, terms, warranties, limits, definitions and exclusions of the policy which may also be found to be applicable as Colony's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

**WHEREFORE,** Colony respectfully requests that this Court enter a judgment declaring the rights, status and obligations of the parties under the Policies, including, but not limited to, the following:

(1) that Charles Relan, individually, and Bimbo's Best Produce, Inc., are not insureds under the Policies and that Colony owes no obligation to them under the Policies;

(2) that the Policies do not afford defense or indemnity for Plaintiffs' allegations asserted in the underlying *Antonio-Morales* action because they do not constitute "bodily injury" "property damage" caused by an "occurrence" or a "personal injury" offense and that, even if they did (which is denied) and took place during one or more of Colony's policy periods, coverage for any damages asserted by Plaintiffs in the underlying *Antonio-Morales action* is nevertheless excluded by one or more exclusions in the Policies;

(3) that Colony has no obligation to defend or to indemnify Charles Relan d/b/a Bimbo's Best Produce in connection with the *Antonio-Morales* action;

(4) that Colony is entitled to reimbursement from Charles Relan d/b/a Bimbo's Best Produce of defense costs incurred on his behalf;

(5) that such further relief as equity and the justice of this cause may require and permit, including but not limited to, an award of costs in favor of Colony; and

NO.99942518.1

(7) for all such other and further relief as equity and the justice of this cause may require and permit.

                Respectfully submitted,

                **PHELPS DUNBAR, L.L.P.**

BY: _____
      George B. Hall, Jr., (Bar #6432)
      Pablo Gonzalez, (Bar #29215)
      Canal Place
      365 Canal Street • Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: (504) 566-1311
      Telecopier: (504) 568-9130
      Email: hallb@phelps.com
             gonzalep@phelps.com

**ATTORNEYS FOR PLAINTIFF
COLONY INSURANCE COMPANY**